# Commonwealth *versus* Giltinan, Claimant.

1. "Domestic distilled spirits," in the Acts of April 15th 1835 and April 10th 1867, means spirits distilled within Pennsylvania.

2. In a legislative sense, all productions within the state are domestic; those without, foreign.

3. The Act of April 21st 1858 is a mere extension of inspection to *all* domestic distilled spirits of the kind meant in the Act of 1835.

4. The Act of 1867 did not extend the inspection laws beyond the subjects of them under previous acts.

5. The Acts of 1835, 1858 and 1867 are *in pari materiâ*.

6. Parol evidence "that all spirits distilled within the United States are known as "domestic distilled spirits," is inadmissible.

7. Spirits *manufactured* in another state and *rectified* here, are not within the inspection laws as to "domestic distilled spirits."

8. The Act of 1867 is penal and must be construed strictly.

9. The inspection laws were enacted to give character abroad to our own manufactures and insure a market on account of the place of their origin.

10. Case of Two Hundred Chests of Tea, 9 Wheat. 430, commented on.

January 13th 1870. Before THOMPSON, C. J., READ and SHARSWOOD, JJ. AGNEW, J., at Nisi Prius.

Certiorari to the Court of Common Pleas of *Philadelphia*: No. 335, to January Term 1869.

On the 8th of June 1867, John Stauffer, inspector of domestic distilled spirits in Philadelphia, filed an information, setting forth that on the 5th day of the same month he had seized three barrels

[Commonwealth *v.* Giltinan.]

of domestic distilled spirits, and had the same in his possession as forfeited to the Commonwealth, because the spirits had been found in the possession and custody of John S. Wilson in fraud of the inspection laws of the Commonwealth, not having been inspected and marked as required by the Act of April 10th 1867. The informer prayed for process, that the spirits may remain forfeited, and the proceeds distributed according to the Act of Assembly, &c.

On the 29th of June David Giltinan filed a claim to the property, averring that he was the "bonâ fide owner of the three barrels of domestic distilled spirits," and denied that they were in the custody, &c., of Wilson, in fraud of the inspection laws. The same day the claimant filed a plea denying, as in the claim, that "the said three barrels of domestic distilled spirits" were "in the possession and custody or within the control of" Wilson, in fraud of the inspection laws, &c.

The case was tried, October 26th 1868, before Pierce, J. ,

Stauffer, the inspector, testified to the seizure of the barrels; they had not the state inspector's marks; they contained domestic distilled spirits; they were rectified.

J. B. Apple testified—the contents of the barrels were domestic distilled spirits, by which he meant distilled somewhere in the United States.

L. Blodgett testified that the liquor was domestic, but could not tell whether they were Pennsylvania or New York spirits.

The defendant gave evidence by D. O'Conner that he was in the employ of Giltinan, and shipped the three barrels himself; they were part of a lot of sixty-two barrels bought of Mr. Brice; "the liquor came raw and we rectified it."

Brice testified to the sale of the liquor to Giltinan; it had come from the distillery of N. P. Fortune, New York.

The acts upon which this proceeding is founded were the following :—

Act of April 15th 1835, § 123, Pamph. L. 410, Purd. 359, pl. 1, enacts that "spirituous liquors distilled within this Commonwealth, shall, if designed for exportation from the port of Philadelphia, be liable to inspection by an inspector of domestic distilled spirits, appointed for the city and county of Philadelphia. Domestic distilled spirits may also be inspected at Lancaster, * * Columbia," &c.

Act of April 21st 1858, Pamph. L. 393, Purd. 361, pl. 26, enacts that " all domestic distilled spirits for sale at the port of Philadelphia, whether for exportation or otherwise, shall be inspected, &c., in the manner now provided by law," &c.

Act of April 10th 1867, Pamph. L. 1133, Purd. 1491, pl. 13, enacts—Sect. 1. "That all inspectors, &c., of domestic distilled spirits are required to mark with a stencil brand on one of the heads of every cask or other vessel containing any spirituous

[Commonwealth *v.* Giltinan.]

liquors liable to inspection by the laws of this Commonwealth, the exact proof and degrees, &c., * * * together with the date of such inspection, the name of the inspector, and the Arms of this Commonwealth: Provided, that all distilled spirits manufactured in the city and county of Philadelphia shall be so inspected and marked at the place in which the same shall be produced.

Sect. 3. "That all domestic distilled liquors which are by law required to be inspected and marked as aforesaid, which shall be found in the possession or custody, or within the control of any person or persons in fraud of the inspection laws of this Commonwealth, shall be seized by the inspector of the place in which such liquors may then be, and the same shall be forfeited to the Commonwealth; and the proceedings to enforce such forfeiture shall be in the nature of a proceeding *in rem* in the Court of Common Pleas, in the county in which such forfeitures shall take place: Provided, that the person or persons detecting any fraud as aforesaid shall be entitled to one-third of the forfeiture: and provided also, that in the city and county of Philadelphia, one-third of all such forfeitures shall be for the use of the poor of said city and county."

The plaintiff offered to prove, by persons engaged in the distillation of spirits and by former state inspectors, that all spirits distilled within the United States are called and known as domestic distilled spirits, and that the state inspectors formerly inspected all such spirits.

The court overruled plaintiff's offer, and excluded the testimony. Thereupon the plaintiff requested the court to charge the jury—

1. That if they are satisfied that the spirits seized were distilled within the United States, and that at the time they were seized they had not been inspected in the manner provided by the law of this Commonwealth, their verdict should be for the plaintiff.

2. That if they are satisfied that the spirits seized were rectified in Pennsylvania, and that at the time they were seized they had not been inspected in the manner provided by the laws of this Commonwealth, their verdict should be for the plaintiff.

3. That the claimant had admitted in the pleadings on record in this case that the spirits seized were domestic distilled spirits, and if they are satisfied the same had not been inspected before their seizure in the manner provided by the laws of this Commonwealth, their verdict should be for the plaintiff.

The court negatived the points, and instructed the jury to find for the claimant.

The verdict was for the claimant.

On the removal of the case to the Supreme Court the plaintiff assigned for error, the rejection of the offer of evidence, and the instructions of the court.

[Commonwealth v. Giltinan.]

*J. W. M. Newlin* (with whom was *F. C. Brewster*, Attorney-General), for plaintiff in error.—They referred to the several Acts of Assembly relating to inspections, &c. Spirits manufactured in New York are "domestic:" Hart *v.* Willetts, 12 P. F. Smith 15. Parol evidence of contemporaneous construction was proper: Chests of Tea, 9 Wheat. 438; United States *v.* Breed, 1 Sumn. 168; Rogers *v.* Goodwin, 2 Mass. 478; Rex *v.* Scott, 3 T. R. 604; Dunbar *v.* Roxburgh, 3 Cl. & Fin. 353; Bank *v.* Anderson, 3 Bing. N. C. 666; Rex *v.* Osbourne, 4 East 327; Stewart *v.* Lawton, 1 Bing. 377; Sheppard *v.* Gosnold, Vaugh. 169; Attorney-General *v.* Parker, 3 Atk. 577; 2 Phillips on Ev. 800; Sharswood's Starkie on Ev. 652, 700–705; Coke's 2d Inst. 282.

*T. R. Elcock* and *R. P. White*, for defendant in error.—Courts will bend the words of a statute to a reasonable construction: Fetter *v.* Wilt, 10 Wright 462.

The opinion of the court was delivered February 7th 1870, by

THOMPSON, C. J.—The paramount question of this case is, whether the words "domestic distilled spirits," in the inspection laws of this Commonwealth, mean only spirits distilled within the Commonwealth, or extend equally to spirits manufactured in other states and brought hither. The nature of state authority and jurisdiction would necessarily incline one to the opinion that the term "domestic" is only appropriately used in an act of the state legislature to describe a product exclusively belonging to, and within the sovereign jurisdiction of the state. As a government with sovereign powers within its limits and none outside, other states are, in a legislative sense, necessarily foreign. All productions within are domestic; those from outside are foreign. When the state speaks of "domestic" manufactures, it means, as a general thing, those within its jurisdiction: that of course is the first sense of this expression, at least; if there be another, we must look for it *ab extra* the expression. I think it very clear, that the term "domestic distilled spirits" means *ex visceribus suis*, those manufactured within this Commonwealth. But we have that within the Act of 1835, the commencement of the inspection system of liquors to-day, which is explanatory of those words. The first clause of the 123d section of the Act of the 15th April 1835 declares that "spirituous liquors distilled within this Commonwealth shall, if designed for exportation from the port of Philadelphia, except," &c., be liable to inspection by an inspector of "domestic distilled spirits," appointed for the city and county of Philadelphia; and the act provides for the appointment of inspectors also for Lancaster, and certain towns and boroughs in the country, viz., for the borough of Wrightsville, in York county, Norristown, Montgomery county, and for Allegheny

[Commonwealth *v.* Giltinan.]

county. And it further provides that ".domestic distilled spirits" *may* be inspected at each of those places. They may be inspected at these places as well as at Philadelphia. This is the meaning and reason for the phraseology in the act noticed by the counsel for the Commonwealth. There is no room to entertain the idea contended for, that the section means the inspection of spirituous liquors distilled within this Commonwealth, as also the inspection of "domestic distilled spirits" in a national sense. In Catherwood *v.* Collins, 12 Wright 480, the limited sense of the terms is accepted without a question. The learned judge below was quite right therefore, we think, in holding to this view. Upon the Act of 1835, the Commonwealth had no case, for it was proved, and not controverted, that the spirits seized were manufactured in New York, and only rectified in Philadelphia.

But it was argued that, by the Act of 21st of April 1858, the Act of 1835 was altered, and the liability to inspection enlarged, so as to extend to "domestic distilled spirits" in a national sense. We are troubled with a refutation of this pretension, only because the section of the act relied on to prove this position was mainly kept out of view on the trial.

By the Act of 1835, only such liquors as were designed for exportation were subject to inspection, excepting coastwise. The Act of 1858 changed this, and provided that "*all* domestic distilled spirits for sale at the port of Philadelphia, whether for exportation or otherwise, shall be inspected," &c., by "the duly appointed inspectors of domestic distilled spirits, in the manner now provided by law." This was a mere extension of inspection to ALL domestic distilled spirits of the kind meant by the original act, viz., all manufactured in the Commonwealth, and for sale at the port of Philadelphia, whether for export or otherwise. The Act of 10th April 1867, under which the seizure took place, did not extend the inspection laws beyond the subjects of them under previous acts. It regulated inspections, and provided the penalty of seizure of non-inspected liquors. The learned judge very properly held all these acts as in *pari materia*, and as applicable to one and the same subject-matter, namely, to the inspection of distilled spirits manufactured in this Commonwealth. There is not a word in either of the acts, subsequent to the Act of 1835, to extend the inspection laws beyond the subject-matter of that law ; and, as we have already said, it contained a clause which was expository of its meaning, and proved it applicable only to the manufacture of spirits within the state.

This being the meaning of these acts, it would have been error to have admitted parol testimony as to their supposed meaning. That is never done. Whether an article of commerce is that which is described by given words in a statute, is sometimes the subject of proof. But this only defines the article, not the law.

[Commonwealth v. Giltinan.]

Whether an article was bohea tea, was the matter in controversy in the case of Two Hundred Chests of Tea : 9 Wheat. 430. It was seized by the collector at Boston because entered as bohea, and he alleged it was black tea which bore a higher duty. The question in proof there was, not what the Act of Congress was or meant, but what the article seized was. That was certainly the subject of proof, and that was not what was proposed here. Here there was no dispute about the articles seized. The dispute was whether it was within the Acts of Assembly requiring its inspection. To ascertain that, the law must be construed by legal rules and by its constituted interpreters, the courts, and not by experts. The learned judge very properly, therefore, rejected the proposed testimony.

It was argued, but not strenuously, that rectified liquors, without regard to where made, if rectified within this Commonwealth, were liable to inspection and seizure, if not inspected and branded. The act is penal and must be construed strictly, and this is not within its words. The rectifying process is not a manufacturing process. Webster says it means "correcting; amending; refining by distillation, sublimation; adjusting." Rectifying distilled spirits, therefore, made in another state, does not constitute it spirituous liquor manufactured within this Commonwealth. The spirits were not *manufactured* here, they were only corrected or refined within this Commonwealth.

The inspection laws were not enacted to produce emoluments to inspectors; they were to give character abroad to our own manufactures, and thus to insure a market on account of the place of their origin. The state gains nothing pecuniarily by inspecting—the officers do. The state gains a character for her manufactures, and therefore she does not choose to allow the products of other states to pass for hers; nay, not even to increase the emoluments of her inspectors. The learned judge was right in denying the claim to seize on account of non-inspection of rectified liquors, manufactured in another state, and refined here.

We are of opinion that the plea was a sufficient denial of everything in the case which went to show a right to seize these barrels of whiskey. It denied that they were in the possession of J. S. Wilson in fraud of the inspection law. Not being stencil marked, it lay on the defendant, after the article was proved to be distilled spirits, to show why they were not so marked, and it seems to me nothing could more satisfactorily show this than that they were the product of a state, foreign as a state, to Pennsylvania, viz., the state of New York, and not required to be inspected. It cannot be doubted that this fact would directly meet the allegation of fraud upon our inspection laws. There was no error in this ruling.

A question as to the kind of casks or vessels to which inspec-

[Commonwealth *v.* Giltinan.]

tion extends under the Acts of Assembly we have been consider-
ing, was somewhat discussed at bar, and in the paper-book of the
defendants in error. It is not involved in this case, and we do not
decide it; not because of inherent difficulties in it, but because it
is not raised by the plaintiff in error, and not necessary to be
determined in answer to anything that is raised.

There being no error in the record, the judgment is affirmed.